## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA          :
                                  :
                                  :
                                  :
v.                                :        Case No.:    8:10-cr-00100-JSM-MAP
                                  :
                                  :
                                  :
EDWIL DIEGO NAVAS CARCAMO         :
_____  :

## DEFENDANT EDWIL DIEGO NAVAS CARCAMO'S SENTENCING MEMORANDUM

COMES NOW, the undersigned counsel, on behalf of the Defendant, EDWIL DIEGO NAVAS CARCAMO and files this his sentencing memorandum which encompasses all remaining legal and factual objections, a 3553 analysis, all requests for mitigation, sentencing suggestions, and miscellaneous sentencing issues and, in support of said issues, states as follows:

I.      POSITION AS TO A REASONABLE SENTENCE FOR THE DEFENDANT

The Defendant respectfully suggests that a sentence of 97 months is sufficient but not greater than necessary to accomplish the objectives as set forth in 18 U.S.C. 3553 and the United States Sentencing Guidelines. This is based upon the analysis of the United States Sentencing guidelines as set forth below, which primarily includes the following: a minor role reduction and an adjustment for acceptance of responsibility. If the Defendant receives a role reduction and NO adjustment for acceptance of responsibility, the resulting offense level is level 30, or 97 – 121 months imprisonment. This suggested sentence is also based upon the 3553 mitigation analysis set forth below, which primarily includes the following: the need to avoid unwarranted sentencing disparity among defendants with similar records and similar crimes.

II.    PRE-SENTENCE INVESTIGATION REPORT - FACTUAL OBJECTIONS

Paragraph 9. Page 6. The PSR states that "although Blanco was initially identified as the captain/master of the GFV, it was later determined that Blanco was the navigator of the GFV." This infers that Blanco was not the captain of the vessel, an inference which directly contradicts co-defendant Blanco's trial testimony and his own admission upon arrest.


III.    PRE-SENTENCE INVESTIGATION REPORT - LEGAL OBJECTIONS

A.    Paragraph 20, Page 7. The Defendant objects to the PSR not decreasing the offense level by two (2) levels for the Defendant's role as a minor participant in the criminal activity. *See* USSG 3B1.2.

1.    Although the Application Notes state that this section should be used infrequently, it does not indicate that it should not be used when appropriate. To the contrary, Application Note 3 specifically states:

> **"A defendant who is accountable under Section 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline."**

2.    Pursuant to the Application Notes of Section 3B1.2, a minimal participant is:

> **"intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant."**

3.    The United States Sentencing Commission has previously acknowledged that the guideline and the commentary are unclear about what constitutes a minor or minimal role: "The Commission recognizes that the mitigating role guideline lacks specificity, however, the Commission

leaves to the sentencing court the responsibility of determining whether a defendant is less culpable and should receive an offense level reduction." *See* Guideline Sentencing: Determining Role in the Offense 3B1.2 (Mitigating Role), Office of Training and Technical Assistance, U.S. Sentencing Commission.

4.    Given the Commission's absence of direction, the Defendant suggests that he was a minor participant and is deserving of a role reduction for the following reasons:

a.    *The Defendant lacked knowledge or an understanding of the scope and structure of the criminal enterprise, or the activities of others in the criminal enterprise.   See* Application Note 4.

i.    The Defendant was not aware of the scope of the enterprise as his role was strictly to be a crewman and help out on the boat as directed by the boat captain and those who paid him to be a crewman.

ii.    The Defendant does not deny his participation in this crime, however, he did not have any personal knowledge or involvement as to: the value, re-sale and distribution of the drugs; who within the enterprise was responsible for re-selling them; to whom or where they were being distributed and sold; how many others were involved in the enterprise; who specifically did what within the enterprise.

b.    *The skills required for the defendant's tasks were not special.*

The Defendant's role was as a crewman on board the vessel.   Skills necessary for this type of job are not special, do not require sophistication or education and essentially are of manual labor in nature.   The Defendant performed manual labor as was directed by the captain and other crew members.

c.    *Flat rate and limited compensation was expected by the Defendant.*

The Defendant expected to receive flat rate and limited financial compensation. In comparison to the street value of the drugs on board, i.e., millions of dollars, and the

profit to be earned by the leaders of the conspiracy, his compensation was minimal. The compensation received was also limited when considered in the context of the number of years of prison behind bars he is now facing.

        d.     *The Defendant had no decision-making authority.*

        The Defendant possessed absolutely no decision-making authority. As a crewman on the vessel, he was ordered what to do by the captain and leaders of the conspiracy.

        e.     *The Defendant is at the bottom of the conspiracy's organizational hierarchy.*

        As noted in the PSR at paragraph 9, the Defendant's role was that of a crewman. Also of note, there were also members of the conspiracy responsible for transportation, storage, purchase, payment and ownership on land prior to and subsequent to the sea voyage. The Defendant was a mere crewmen.

        5.     In light of the above factors, the Defendant requests that the court apply USSG 3B1.2(a) and reduce the offense level by two (2) levels.

        B.     Paragraph 14, 23, 24 & 49. The Defendant objects to the PSR's lack of a two-level decrease for acceptance of responsibility. *See* USSG 3E1.1(a).

        1.     USSG § 3E1.1(a) provides for two-level decrease if the defendant clearly demonstrates acceptance of responsibility for his offense. Application Note 2 states in part, this "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. <u>Conviction by trial, does not automatically preclude a defendant from consideration for such a reduction.</u> In a rare situation a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This

may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or challenge to the applicability of a statute to his conduct)."

      2.     Here, the Defendant accepted responsibility as follows:

      a.     He immediately admitted his guilt upon arrest as demonstrated by the attached Report of Investigation. *See* Exhibit One.

      b.     He was scheduled to plead guilty and agreed to speak with the agents again by scheduling a debriefing at the jail. *See* ECF Docket #56. However, one day prior to the debriefing, the Defendant along with all other co-defendants were placed in one room at the jail, visited by an attorney from Honduras, the defendant's country of origin, and an attorney unrelated to this case. The Defendant was told by the Honduran attorney to not speak to anyone about the case, that they would be their new attorneys, that they were illegally extradited to the United States, and that they committed a crime and should be punished in Honduras or Panama, amongst other erroneous advice. This meeting was confirmed by the Government. *See* Exhibit 2. The debriefing, which would have been the first debriefing of any defendant in this case, was cancelled. The meeting also led to undersigned counsel's motion to withdraw, which was denied by Judge Moody after an ex-parte hearing. Id. and *see* ECF Docket # 33, 35, 36 & 37.

      c.     At the ex-parte hearing, the Defendant again admitted that he committed these offenses but that he did not understand how they were criminal violations in the United States and not Panama or Honduras. He also acknowledged that a debriefing was scheduled. *See* Exhibit 3.

      d.     Undersigned counsel scheduled a change of plea hearing, however, the Defendant instructed undersigned counsel to cancel the hearing because he maintained that he committed these criminal acts, but that, according to the Honduran attorney, he did not violate American law, should never have been brought to the United States pursuant to the Universal Declaration of

Human Rights, and should not be imprisoned in the United States but rather in Panama or Honduras. *See* ECF Docket 56 & 57.

        e.      On the first day of trial, undersigned counsel requested that the court conduct an inquiry of the Defendant to confirm his desire to go to trial. In response the Defendant stated, ". . . He says I'm innocent. I want to say something. I never said I was innocent. In this country, the United States, I'm innocent." *See* Exhibit 4, page 6, lines 6-8. This exchange demonstrates that even on the day of trial he admitted his participation in this crime, however, as evidenced by the court's ruling on jurisdiction (*Id.* at pages 3-4, lines 5-25 and 1-9) and the jury's verdict of guilty, that he clearly does not understand how those criminal actions constitute a crime in the United States.

        f.      On October 18, 2010, the Defendant again debriefed with the federal agents involved in this case. During the debriefing, he clearly accepted responsibility for his actions just as he had done during the debriefing on the day of his arrest. *See* Exhibit One.

        3.      The guideline application notes expressly state that acceptance of responsibility is not precluded simply by a defendant exercising his constitutional right to trial and being convicted by a jury, however, it should not be granted in the situation where a defendant goes to trial primarily to dispute the essential factual elements of guilt and, only after being convicted, expresses remorse. Here, the above factors clearly indicate that the Defendant was not disputing the essential factual elements of guilt, rather he was misled by the attorney from Honduras as to how his criminal actions constituted a crime in the United States. Also, this is not a situation where a defendant is only admitting his involvement after being found guilty at trial, rather the Defendant admitted from day one of his arrest that he committed a crime.

        4.      In light of the above factors, the Defendant requests that the court apply USSG 3E1.1(a) and reduce the offense level by two (2) levels.

IV.    18 U.S.C. SECTION 3553 - MITIGATION ANALYSIS

    A.    The Defendant submits that a sentence of 97 months is sufficient but not greater than necessary to comply with the purposes of the Sentencing Reform Act as set forth in 18 U.S.C. Section 3553(a).

    B.    Now that the guidelines are advisory, the Court is free to utilize 18 U.S.C. Section 3553(a)(1), (3)-(7) in fashioning a reasonable sentence for the Defendant. These sections require that the sentence of a federal defendant reflect:

        1.    The nature and circumstances of the offense and the history and characteristics of the defendant; and

        2.    The need for the sentence imposed:

            a.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

            b.    to afford adequate deterrence to criminal conduct;

            c.    to protect the public from further crimes of the defendant;

            d.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

        3.    The kinds of sentences available; and

        4.    The need to avoid unwarranted sentencing disparity among defendants with similar records and similar crimes; and

        5.    The need to provide restitution to any victims of the offense.

    C.    The factors of particular importance in this matter are:

        1.    *The nature and circumstances of the offense.*

a.        The Defendant agrees that this is a very serious crime worthy of a serious punishment by several years behind bars. However, he reiterates his role within this conspiracy as that of a mere crewman and reasserts his argument as set forth in his legal objection above regarding no minor role reduction.

b.        The Defendant is not alleged to have been violent nor is this a crime of violence. As stated above, the Defendant was not in possession of a firearm.

c.        The Defendant immediately surrendered to law enforcement, identified himself by name, truthfully cooperated with the authorities upon his arrest, and has since then debriefed truthfully with the federal agents.

2.        *The history and characteristics of the defendant.*

a.        The Defendant has no prior criminal history. The Defendant respectfully asks this Court to take note that he is a first-time, non-violent offender. The U.S. Sentencing Commission has conducted recidivism studies that demonstrate first-time, non-violent offenders are not likely to recidivate.

b.        The Defendant is a 35-year old native of Honduras who completed four grade levels of school. Prior to his incarceration, the Defendant and his family were living in a home which he personally was building but had not yet completed. He is in an 11-year long committed relationship with the mother of his son and daughter. He was self-employed as a taxi driver and grower and seller of papaya and rice, products which he and his brother grew. He has never consumed alcohol or experimented with the consumption of illegal drugs. See Paragraphs 32-47 of the PSR for additional personal information about the Defendant.

3.        *The need to avoid unwarranted sentence disparities among defendants with similar records and similar crimes.*

a.    The co-defendant and captain of the boat, Alberto Blanco, received a sentence of 97 months imprisonment. The court determined in his case that the appropriate offense level, prior to the 5k1.1 substantial assistance reduction, was a level 33, or 135 months imprisonment. The court did not impose a 2-level enhancement for Mr. Blanco being the captain of the ship.

b.    Here, the PSR recommends that the appropriate offense level is a level 36, or 188 months imprisonment. This is roughly double the 97-month sentence imposed for codefendant and captain, or "navigator" as described by the PSR, Alberto Blanco. It is also roughly 4.5 years longer than the pre-5k1.1 substantial assistance offense level of 33, or 135 months imprisonment, determined by the court in co-defendant and captain Blanco's case.

c.    Given the defendant's reason for going to trial, which was not to dispute the essential factual elements of guilt as described in detail above, the defendant's immediate admission of guilt to law enforcement and the defendant's lesser role than co-defendant and captain Blanco, a sentence of 188 months as recommended by the PSR would result in a an unwarranted sentencing disparity.


V.    SUGGESTED SENTENCE

The Defendant respectfully suggests that a sentence of 97 months is sufficient but not greater than necessary to accomplish the objectives as set forth in 18 U.S.C. 3553 and the United States Sentencing Guidelines. This is based upon the analysis of the United States Sentencing guidelines as set forth above, which primarily includes the following: a minor role reduction and an adjustment for acceptance of responsibility. If the Defendant receives a role reduction and NO adjustment for acceptance of responsibility, the resulting offense level is level 30, or 97 – 121 months imprisonment. This suggested sentence is also based upon the 3553 mitigation analysis set forth above, which primarily

9

includes the following: the need to avoid unwarranted sentencing disparity among defendants with similar records and similar crimes.

VI.    REQUESTS FOR RECOMMENDATIONS AND MISCELLANEOUS ISSUES

At sentencing, the Defendant will respectfully request that he be housed in Coleman FCI which is closest in proximity to his sister in Miami, Florida.

        1.    Further, the Defendant respectfully requests that this Court state on the record the reasons why it is making said recommendation.

              a.    The Bureau of Prisons welcomes judicial recommendations (see *BOP Program Statement 5100.07*) and by statute it is required to consider them. 18 U.S.C. Section 3621(a)(4)(B). Specifically, an institution in the above area would be preferable because:

                  i.    The above FCI is closest in proximity to his sister in Miami.

                  a.    Bureau statistics show that it honors judicial recommendations in the overwhelming majority of cases in which a defendant qualifies for a particular recommended institution if there are reasons on the record to support such a designation.

## CONCLUSION

WHEREFORE, the Defendant, EDWIL DIEGO NAVAS CARCAMO, by and through his undersigned counsel, prays this Honorable Court will grant the requested relief and/or any other relief deemed necessary.

By: /S/ T. Federico Bower
Florida Bar No.: 0151890
O'Brien Bower, PA

Bayshore Center
511 West Bay Street
Third Floor - Suite 330
Tampa, Florida 33606
Direct:        (813) 250-3533
Facsimile:     (866) 203-2532
Email: tfb@obrienbower.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on October 23, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all other counsel of record.

By: /s/ T. Federico Bower

# Exhibit 1

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
| --- | --- |
| | PAGE   1 |
| R E P O R T   O F   I N V E S T I G A T I O N | CASE NUMBER ▮▮▮▮▮▮ |
| | OCDETF NO:   FC-FLM-00433 |

**TITLE:** ALBERTO FILIMON EVERITT BLANCO, ET AL

**CASE STATUS:** INTERIM RPT

| REPORT DATE 031510 | DATE ASSIGNED 030810 | PROGRAM CODE YL0 | REPORT NO. 004 |
| --- | --- | --- | --- |

**RELATED CASE NUMBERS:**

**COLLATERAL REQ:**

**TYPE OF REPORT:**
MEMO OF INTERVIEW   /   INVESTIGATIVE FINDINGS

TOPIC: POST-MIRANDA DEBRIEFING OF CREWMEMBER EDWIL DIEGO NAVAS CARCAMO.

**SYNOPSIS:**
The ICE Special Agent in Charge (SAC) Tampa, Florida in conjunction with the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation ( ) and U.S. Coast Guard (USCG), is currently conducting Operation Panama E. :ess-North (PANEX-N), a federally approved OCDETF "Strike Force" investigation. Special Agents of PANEX-N are currently investigating drug trafficking organizations responsible for the maritime transportation of cocaine through international waters for later importation into the United States for distribution.  On March 3, 2010, USS Freedom with USCG Law Enforcement Detachment (LEDET) onboard intercepted a 40 foot unnamed stateless go-fast boat 12 NM North Of Punta Grande, Panama. USCG 407 LEDET boarded the go-fast vessel and discovered 51 bales of cocaine.

The following report serves to document the post-Miranda debriefing of crewmember Edwil Diego NAVAS CARCAMO.  The report is a substantial copy of a FBI 302 drafted by S/A Julio Mena.

| DISTRIBUTION: SACTA CAPN  SCRTB | SIGNATURE: LINDSEY   BRETT   B   SPECIAL AGENT |
| --- | --- |
| | APPROVED: DUNN   DON   W   OI GRP SUPERVISOR |
| | ORIGIN OFFICE: TA TAMPA, FL - SAC | TELEPHONE: 727 346 3626 |
| | | TYPIST: LINDSEY |

O F F I C I A L   U S E   O N L Y
  DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
F _HE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
ISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
O ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

# Exhibit 2

| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | |
| v. | : | Case No.: 8:10-cr-00100-JSM-MAP |
| | : | |
| | : | |
| | : | |
| EDWIL DIEGO NAVAS CARCAMO | : | |
| | : | |

## MOTION TO WITHDRAW AS ATTORNEY OF RECORD AND REQUEST FOR EX-PARTE HEARING

COMES NOW, the undersigned counsel, on behalf of the Defendant, EDWIL DIEGO

NAVAS CARCAMO, and respectfully files his Motion to Withdraw as Attorney of Record and

Request for Ex-Parte Hearing, and in support states as follows:

1. Undersigned counsel was CJA appointed on March 12, 2010.

2. The legal basis for this motion is irreconcilable differences due to the fact that the
   Defendant refuses to discuss the merits of the case with undersigned counsel.

3. The Government has confirmed by a review of the jail logs that on March 31, 2010 an
   attorney by the name of Luis Guerra, licensed in the State of Florida, and Jamie Medina,
   apparently not a licensed attorney anywhere in the United States, visited the Defendant as
   well as all other co-defendants at the same time and in the same room.

4. Before said meeting with the above individuals, the Defendant was fully cooperative with
   undersigned counsel.

5. After said meeting, the Defendant refused to discuss the merits of his case or cooperate
   with undersigned counsel in the formulation of a legal strategy.

6. For purposes of not compromising attorney - client privilege and/or not prejudicing his client's legal defenses, undersigned counsel requests an ex-parte hearing requiring the presence of the Defendant.

7. An ex-parte hearing on an unrelated issue has already been scheduled for Monday, April 19, 2010. Said hearing does not require the presence of the Defendant. However, undersigned counsel requests that the Defendant be transported from Pinellas County Jail to the federal courthouse on the same date and time in order to resolve the instant motion.

## CONCLUSION

WHEREFORE, the Defendant prays this Court will grant the above requested relief and/or any other relief deemed necessary.

> By: /s/ T. Federico Bower
> T. Federico Bower, Esquire
> Florida Bar No.: 0151890
> O'Brien Bower, PA
> Bayshore Center
> 511 West Bay Street
> Third Floor - Suite 330
> Tampa, Florida 33606
> Direct:        (813) 250-3533
> Facsimile:    (866) 203-2532
> Email: tfb@obrienbower.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on April 15, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to the following electronic mail addresses:

Kathy J.M. Peluso
Assistant United States Attorney
kathy.peluso@usdoj.gov

> By: /s/ T. Federico Bower

# Exhibit 3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

## CLERK'S MINUTES - CRIMINAL

CASE NO. _8:10-cr-100-T-30MAP___   DATE_April 19, 2010_____

TITLE_USA vs. Edwil Diego Navas Carcamo_____

TIME ___10:05 a.m. - 10:10 a.m._____   TOTAL_5 minutes_____

Honorable___James S. Moody, Jr._____   Deputy Clerk _Sara Boswell_____

Court Reporter __Sherrill Jackson_____   Courtroom ___13A_____

Attorney(s) for Defendant:          Defendant:
T. Federico Bower                   Edwil Diego Navas Carcamo (present)
-----------------------------------
Interpreter: Marisol Marquez-Bos/Spanish

**PROCEEDINGS:   EX PARTE HEARING regarding CJA 21**

The Court inquires from Mr. Bower about the CJA 21 voucher submitted for the Court's approval. Investigator and interpreter expenses are contained in the CJA 21 voucher.

Mr. Bower advises the Court that he retained an investigator to attend the defendant's debriefing.  An interpreter accompanied the investigator to the debriefing and provided interpreting services.

The Court will authorize the voucher.  In the future, counsel shall file the appropriate motion requesting the prior authorization for expert services.



**Exhibit 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE No. 8:10 CR 100 T 30 MAP


UNITED STATES OF AMERICA

            Plaintiff,

v.                          July 19, 2010
                            1:30 P.M.


VICTOR MANUEL BALLESTERO LINARES,
DAVID LOPEZ MENDEZ, EDWIL DIEGO
NAVAS CARCAMO, and EDGARDO
EUDORO EVERETH OCAMPO

            Defendants.
_____/

## E X C E R P T

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE WILLIAM J. CASTAGNA
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Government:    KATHY PELUSO
                       Assistant U.S. Attorney
                       U.S. Attorney's Office
                       400 North Tampa St.,
                       Ste. 3200
                       Tampa, FL 33602


For the Defendant
LINARES:               PEDRO AMADOR
                       Law Office of Pedro Amador,
                            Jr.
                       Suite 925
                       2203 N Lois Ave
                       Tampa, FL 33607

```
For the Defendant
MENDEZ:                    Anne F. Borghetti
                           Anne F. Borghetti, PA
                           520 Second Ave S
                           St Petersburg, FL 33701-4102


For the Defendant
CARCAMO:                   Federico Bower
                           O'Brien Bower, PA
                           Suite 330
                           511 W Bay St
                           Tampa, FL 33606-3533


For the Defendant
OCAMPO:                    Christopher Desrochers
                           Christopher A. Desrochers,
                              PL
                           2504 Avenue G NW
                           Winter Haven, FL 33880


Reported By:               Sandra K. Lee, RPR
                           Official Court Reporter
                           U.S. District Court
                           801 North Florida Avenue
                           Tampa, FL 33602
                           (813) 301-5699


STENOGRAPHICALLY REPORTED
COMPUTER-AIDED TRANSCRIPTION
```

```
1                    P R O C E E D I N G
2                COURT SECURITY OFFICER:  All rise.  The
3    Honorable William J. Castagna presiding.  Be
4    seated.
5                THE COURT:  Good afternoon, ladies and
6    gentlemen.  I thought we might do well to dispose
7    of preliminary questions, particularly subject
8    matter jurisdiction.
9                The government has filed its motion for
10   pretrial determination of jurisdiction by the
11   Court so we have been furnished with a copy of
12   that.
13               Defense counsel, is there any need for
14   extensive argument on the issue?
15               MR. AMADOR:  Good afternoon, Judge.
16   Pedro Amador on behalf of Mr. Ballestero Linares.
17               With respect to the motion, I don't
18   believe there is a need for extensive argument on
19   it.
20               THE COURT:  That was my impression.  Do
21   other defense counsel concur?
22               MS. BORGHETTI:  Yes, Your Honor.
23               MR. BOWER:  Yes, Your Honor.
24               MR. DESROCHER:  Yes, Your Honor.
25               THE COURT:  Miss Peluso, anything
```

```
1    further you wish to present on that issue?
2              MS. PELUSO:  No, Your Honor.  I'll
3    rest on my motion and the attachment to it.
4              THE COURT:  All right.  The Court finds
5    that the motion for presentence determination of
6    jurisdiction by the Court is well supported.  And
7    based thereon that motion is granted for
8    determination and the Court determines that it
9    does have jurisdiction as set forth in the motion.
10             That having been concluded, we will have
11   a brief adjournment till we get the jury panel in
12   the courtroom.
13             Is there anything further we should
14   discuss before that?
15             MS. PELUSO:  I don't believe, Your
16   Honor, from the United States.
17             MR. AMADOR:  No, sir.
18             MR. BOWER:  On behalf of Mr. Edwil Diego
19   Navas Carcamo, my name is Federico Bower.  I would
20   like the Court to conduct a brief colloquy.
21             On behalf of my client Edwil Navas
22   Carcamo, Judge, I would like the Court to conduct
23   a brief colloquy that it is his desire to proceed
24   to trial and remain with his plea of not-guilty.
25   My advice to him has been to the contrary.
```

SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

1          However, for purposes of the record I
2     would like the Court, if it's so inclined, to
3     conduct that colloquy.
4          THE COURT:  You have reviewed the
5     matters which are relevant to the defendant's case
6     thoroughly and discussed them with him.
7          I presume that's true?
8          MR. BOWER:  Yes, it is, Judge.
9          THE COURT:  You're otherwise prepared to
10    go to trial?
11         MR. BOWER:  Yes, we are.
12         THE COURT:  Do you intend to put the
13    defendant on the stand?
14         MR. BOWER:  At this time we have not
15    made a decision on that issue.
16         THE COURT:  What further colloquy do you
17    suggest is appropriate at this time?
18         MR. BOWER:  I would simply ask the Court
19    to inquire of my client that it is his desire --
20         THE COURT:  Pardon?
21         MR. BOWER:  I would ask the Court to
22    inquire of my client that it's his desire to
23    insist on his not-guilty plea and proceed to
24    trial.
25         THE COURT:  Mr. Carcamo, you have heard

```
 1    the statements made by your attorney?
 2              DEFENDANT:  Yes, I have heard it.
 3              THE COURT:  Do you understand what he
 4    has said to me?
 5              THE DEFENDANT:  What I wanted to do was
 6    go to trial.  He says I'm innocent.  I want to
 7    say something.  I never said I was innocent.  In
 8    this country, the United States, I'm innocent.
 9              I have never committed a crime in any
10    part of the United States.
11              THE COURT:  You understand, Mr. Carcamo,
12    that your attorney has stated under his opinion
13    that you will be better served by entering a
14    guilty plea.
15              THE DEFENDANT:  Of course, I understand
16    it.
17              THE COURT:  But you certainly have a
18    right to go to trial, and by your statement on the
19    record that you wish to do so, that will conclude
20    that inquiry.
21              THE DEFENDANT:  Fine.  We'll go to
22    trial.
23              THE COURT:  Thank you.  We'll be in
24    recess.  How long will it take, Mr. Bohlig, to get
25    the panel here?
```

```
 1                    COURT SECURITY OFFICER:  15 to 20
 2   minutes, Your Honor.
 3                    THE COURT:  We'll reconvene as soon as
 4   the panel is brought up.  Anything further from
 5   any other counsel?
 6                    MR. AMADOR:  No, Your Honor.
 7                    MS. BORGHETTI:  No, Your Honor.
 8                    MR. DESROCHER:  No, Your Honor.
 9                    MS. PELUSO:  No.
10                    THE COURT:  We'll be in recess.
11                 (CONCLUSION OF REQUESTED EXCERPT.)
12                    I CERTIFY that the foregoing is a
13   true and accurate transcription of my stenographic
14   notes.
15   Dated:  10/21/2010.
16
17                    ___s/ Sandra K. Lee_____
                         SANDRA K. LEE, RPR
18                       Official Court Reporter
19
20
21
22
23
24
25
```